IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| S.D.B.B.,[1] | ) |
| | ) |
|         Petitioner, | ) |
| | ) |
|       v. | ) |
| | ) |
| TERRY S. JOHNSON, in his official | ) |
| capacity as Sheriff, Alamance County; | ) |
| MAJOR STEVEN YOUNG, WARDEN, Alamance | )     1:25-cv-882 |
| County Detention Facility; TODD LYONS, | ) |
| in his official capacity as Acting | ) |
| Director of Immigration and Customs | ) |
| Enforcement; KRISTI NOEM, Secretary of | ) |
| Homeland Security; and PAMELA BONDI, | ) |
| United States Attorney General, | ) |
| | ) |
|         Respondents. | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

THOMAS D. SCHROEDER, District Judge.

Petitioner S.D.B.B. has filed a seven-count petition for a writ of habeas corpus ("Petition"), in which he asserts that he has been illegally detained by the United States Department of Homeland Security's Immigration and Customs Enforcement ("ICE") since September 24, 2025. (Doc. 1.) Petitioner subsequently filed an emergency motion for a temporary restraining order ("TRO"), which is now before this court. (Doc. 4.) The court held a hearing on October 1, 2025, and enjoined Petitioner's removal from the continental United States until 12:00 a.m. on October 7, 2025,

---

[1] Petitioner has a pending motion to proceed under his initials rather than full name. (Doc. 3.)

to permit the court adequate time to consider the request. (Doc. 7.) The court then ordered briefing, the parties thereafter filed multiple briefs and supplements, and the court extended its October 1 order another twenty-four hours to consider these materials. (Docs. 9, 11, 12, 13, 14, 16, 18.) For the reasons that follow, Petitioner's emergency motion for a TRO will be granted in part and denied in part.

## I. BACKGROUND

The allegations of the Petition, as well as facts of record, show the following:

Petitioner entered the United States without inspection in November 2021. (Doc. 1 ¶ 3.) On November 12, 2021, United States Customs and Border Protection ("CBP") issued Petitioner a Notice to Appear. (Doc. 11-1 at 7.) The following day, CBP released Petitioner into the United States on his own recognizance. (Id. at 10.) Petitioner alleges that he has since complied with all conditions of release (Doc. 1 ¶ 3), although Respondents disagree (Doc. 11 at 3; Doc. 11-1 at 10).

In June 2022, Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal with United States Citizenship and Immigration Services. (Doc. 1 ¶ 4.) His next hearing in connection with the asylum application was scheduled for March 2027 in Charlotte, North Carolina. (Id. ¶ 5; Doc. 1-4 at 1.)

On September 24, 2025, military base guards questioned and

2

detained Petitioner when he attempted to gain access to Marine Corps Air Station Cherry Point in the regular course of his employment as a commercial truck driver for a large food distribution company. (Doc. 1 ¶¶ 6-8; Doc. 11 at 4.) Petitioner presented both his driver's license and his government-issued Employment Authorization Document ("EAD"), which is valid until August 2030. (Doc. 1 ¶¶ 8-9; Doc. 1-5 at 1.) Nevertheless, the base guards detained Petitioner, and ICE officers arrived at the base to transfer him to the Alamance County Detention Facility in Graham, North Carolina. (Doc. 1 ¶ 8.) At the time, the ICE officers did not realize that Petitioner had been previously released by CBP on his own recognizance. (Doc. 11 at 4.) On October 2, 2025, during the pendency of the present petition, Supervisory Detention and Deportation Officer ("SDDO") Michael Sanchez revoked Petitioner's release after Petitioner had been transferred to Stewart Detention Center in Lumpkin, Georgia. (See Doc. 11-1 at 10; Doc. 12 at 3.) Petitioner reports that he has now received notice that his removal hearing has been advanced to October 9, 2025, at 1:00 p.m. in Lumpkin, Georgia. (Doc. 12-1.)

On September 27, 2025, Petitioner filed the present federal habeas petition pursuant to 28 U.S.C. § 2241, challenging his detention. (Doc. 1.) The Petition raises the following claims: (1) Petitioner's detention violates his substantive rights under the Fifth Amendment's Due Process Clause; (2) Petitioner's

3

detention violates his procedural rights under the Fifth Amendment's Due Process Clause; (3) Respondents unconstitutionally and unlawfully revoked Petitioner's release on recognizance under the Administrative Procedure Act ("APA"); (4) the revocation of Petitioner's release was arbitrary and capricious under the APA; (5) the revocation of Petitioner's release exceeded Respondents' statutory authority under the APA; (6) no source of law authorizes Petitioner's detention under the circumstances; and (7) Respondents violated the Accardi doctrine by failing to follow their own procedures when they detained Petitioner.[2] See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954). (Id. ¶¶ 62-109.)

On October 1, 2025, Petitioner filed an emergency motion for a TRO. (Doc. 4.) Petitioner requested an emergency hearing on the motion, which the court held that same day. (Id. at 4; see Doc. 6.) Moreover, Petitioner requests his immediate release from custody either under the terms of his Order of Release on Recognizance ("OREC") or under reasonable conditions of supervision with constitutionally adequate procedures or, in the alternative, an order preventing his transfer to another jurisdiction or deportation from the United States. (Doc. 4 at 5.) The court enjoined Petitioner's removal from the continental

---

[2] Petitioner does not advance claims one, three, and four in his motion for temporary relief.

4

United States until 12:00 a.m. on October 7, 2025, pending the court's further consideration of the Petition. (Doc. 7 at 3-4.) On October 2, 2025, the court issued an order directing Respondents to respond to Petitioner's emergency motion for a TRO by 5:00 p.m. on October 3, 2025. (Doc. 8.) Respondents filed a response (Doc. 11), and Petitioner filed multiple supplemental memoranda (Doc. 9; Doc. 12). Respondents filed another response to the supplemental memoranda. (Doc. 13.) The court further directed Respondents to address additional issues raised by Petitioner's response, and Respondents filed a supplemental response. (Doc. 14.) Petitioner replied the same day. (Doc. 16.) To permit consideration of these recent filings, the court extended through 12:00 a.m. October 8, 2025, its prior order enjoining Respondents from removing Petitioner from the United States. (Doc. 18.) Thus, Petitioner's emergency motion is fully briefed and ready for decision.

## II. ANALYSIS

### A. Whether the Court Has Jurisdiction over Petitioner's Habeas Petition

As a threshold matter, Respondents argue that several provisions of the Immigration and Naturalization Act ("INA"), as amended by the REAL ID Act, preclude Petitioner from bringing his claims before this court.[3] (Doc. 11 at 7.)

---

[3] Even though Petitioner has been moved out of the district to a detention facility in Georgia, the court retains jurisdiction over the case. <u>See</u>

5

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." INS v. St. Cyr, 533 U.S. 289, 301 (2001); see Munaf v. Geren, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). In the immigration context, habeas is "regularly invoked on behalf of noncitizens." St. Cyr, 533 U.S. at 305. Although the INA and the REAL ID Act contain jurisdiction-stripping provisions, they "do not eliminate habeas jurisdiction over all immigration-related detention claims." Luna Quispe v. Crawford, 25-cv-1471, 2025 WL 2783799, at *2 (E.D. Va. Sept. 29, 2025) (emphasis added) (quoting Hasan v. Crawford, 25-CV-1408, 2025 WL 2682255, at *3 (E.D. Va. Sept. 19, 2025)).

### 1. 8 U.S.C. § 1252(b)(9)

First, Respondents argue that pursuant to 8 U.S.C. § 1252(b)(9), Petitioner must bring his challenge to his detention in immigration court, not in federal district court. (Doc. 11 at 7.) Specifically, Respondents contend that the statute's "zipper

---

Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

clause" permits judicial review of all matters arising from removal only upon the issuance of a final removal order. (Id.) Though Petitioner does not address the court's alleged lack of jurisdiction under § 1252(b)(9), "[f]ederal courts have an independent duty to confirm their own jurisdiction." Shaiban v. Jaddou, 97 F.4th 263, 265 (4th Cir. 2024).

Under § 1252(b)(9),

[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

"But that provision doesn't help the government here because it 'applies only with respect to review of an order of removal under [8 U.S.C. § 1252(a)(1)].'" Casa de Md. v. U.S. Dep't of Homeland Sec., 924 F.3d 684, 697 (4th Cir. 2019) (alteration in original) (quoting St. Cyr, 533 U.S. at 313). Simply put, the provision cannot apply until a removal order has been issued.

Here, Petitioner does not challenge any removal order because no order of removal has yet been entered against him. Rather, he challenges the constitutionality and legality of his detention during the period before his removal hearing, which he alleges has now been scheduled for October 9, 2025, at 1:00 p.m. (See Doc. 12 at 1; Doc. 12-1 at 1.) Thus, § 1252(b)(9) does not deprive the court of jurisdiction.

7

### 2. 8 U.S.C. § 1252(g)

Second, Respondents argue that 8 U.S.C. § 1252(g) deprives the court of jurisdiction over any challenge to an alien's detention in connection with removal proceedings. (Doc. 11 at 8.) Petitioner counters that § 1252(g) narrowly applies only to judicial review of the Attorney General's lawful discretion "in only three distinct actions: (1) commence removal proceedings, (2) adjudicate those cases, and (3) execute orders of removal." (Doc. 9 at 34 (citing Abrego Garcia v. Noem, No. 25-1345, 2025 WL 1021113, at *2 (4th Cir. Apr. 7, 2025)).)

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  This provision's plain language "applies only to three discrete actions that the [Secretary of Homeland Security] may take: her 'decision or action to commence removal proceedings, adjudicate cases, or execute removal orders.'"  Casa de Md., 924 F.3d at 696 (alteration in original) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)); see also Reno, 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."); Suri v. Trump, No. 25-

8

1560, 2025 WL 1806692, at *7 (4th Cir. Jul. 1, 2025) ("Because § 1252(g) simply does not extend to habeas challenges to present immigration confinement, courts routinely exercise jurisdiction over such challenges."). Indeed, § 1252(g) is directed "against a particular evil: attempts to impose judicial restraints upon prosecutorial discretion." Reno, 525 U.S. at 485 n.9. Here, to the extent Petitioner challenges his detention and not the pending hearing, his claims fall outside § 1252(g)'s scope.

## B. Whether a TRO Should Issue

### 1. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Id. at 20. These factors also apply to the issuance of a temporary restraining order. Green v. ABC Cos., 702 F. Supp. 3d 418, 423 & n.1 (W.D.N.C. 2023). Courts routinely apply the factors in the immigration context. See, e.g., Vitkus v. Blinken, 79 F.4th 352, 361 (4th Cir. 2023) (applying the factors to determine whether the plaintiff had demonstrated a likelihood of success on the merits in opposing his extradition to Lithuania); Miranda v. Garland, 34

9

F.4th 338, 366 (4th Cir. 2022) (applying the factors to determine whether the procedures afforded by the government in § 1226(a) bond hearings violate the Constitution).

Because preliminary relief is extraordinary and not to be granted as a matter of course, it may "only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22. Moreover, because a prohibitory injunction seeks to maintain the status quo, courts focus on "the last uncontested status between the parties which preceded the controversy." Di Biase v. SPX Corp., 872 F.3d 224, 228 n.4 (4th Cir. 2017) (quoting Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013)). Here, that would be Petitioner's status before he was detained September 24, 2025.

With this standard in mind, the court turns to the first factor: whether Petitioner has established that he is likely to succeed on the merits of his habeas challenge.

### 2. Whether Petitioner's Detention Falls Under 8 U.S.C. § 1225 or § 1226

Respondents argue that Petitioner's detention is governed by the mandatory detention provisions in 8 U.S.C. § 1225(b)(2) rather than the discretionary detention provisions in 8 U.S.C. § 1226(a). (Doc. 11 at 11.) According to Respondents, they were free to detain Petitioner under because he is an "applicant for admission" and thereby subject to mandatory detention "during the pendency of

10

his removal proceedings." According to Respondents, they were free to detain Petitioner under § 1225 because he is an "applicant for admission" and thereby subject to mandatory detention "during the pendency of his removal proceedings." (Id.) During the hearing, Respondents further elaborated that Petitioner "does not acquire the right to certain protections because – simply because the statute was perhaps not correctly applied in the first place." (Doc. 10 at 36:16-18.) Petitioner counters that his detention is governed by § 1226(a)'s discretionary detention provisions. (Doc. 9 at 6.)

Under § 1225(a)(1), "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 288 (2018). The second category, which serves as a catchall, creates a mandatory detention scheme by providing that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [full removal proceedings]." 8 U.S.C. § 1225(b)(2)(A). Pursuant to § 1225, an applicant for admission may only be released on parole "for urgent

11

humanitarian reasons or significant public benefit." _Jennings_, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

On the other hand, § 1226(a) sets out the "default rule" for detaining and removing aliens "already present in the United States." _Id._ at 303. Under § 1226, an alien who is "arrested and detained" faces three potential outcomes during the pendency of his removal proceedings: (1) the Attorney General "may continue to detain the arrested alien," (2) the Attorney General "may release the alien on bond of at least $1,500," or (3) the Attorney General "may release the alien on conditional parole." 8 U.S.C. § 1226(a). The provision therefore establishes a discretionary detention framework. _See Miranda_, 34 F.4th at 345.

In support of their position that Petitioner is an "applicant for admission" and thereby subject to mandatory detention under § 1225, Respondents point to the fact that Petitioner entered the United States illegally and cannot demonstrate that he is "clearly and beyond a doubt entitled to be admitted" because he is "inadmissible" under 8 U.S.C. § 1182(a)(6). (Doc. 11 at 11-12.) "But the statute also provides that '[t]he term "applicant for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.'" _Luna Quispe_, 2025 WL 2783799, at *5 (alteration in original) (quoting 8 U.S.C. § 1101(a)(4)). This definition, when read together with the present tense

12

formulation of § 1225(b)(2)(A), seemingly "brings within its scope only those individuals actively seeking admission into the country, and not those that have already entered the country (albeit illegally)." Id.

In support of their detention of Petitioner, Respondents rely on the recent Board of Immigration Appeals decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (B.I.A. 2025), which held that all aliens present in the United States without admission are applicants for admission within § 1225(b)(2)(A) and thus must be detained for the duration of their removal proceedings. (Doc. 11 at 9-10.) This decision, however, admittedly conflicts with longstanding treatment by the immigration courts and officials, see Yajure Hurtado, 29 I&N Dec. at 225, as well as virtually every district court nationwide that has addressed these sections and found that § 1225 either does not or likely does not broadly apply to aliens already present within the United States. See, e.g., Luna Quispe, 2025 WL 2783799, at *5; Guerrero Orellana v. Moniz, 25-cv-12664, 2025 WL 2809996, at *6 (D. Mass. Oct. 3, 2025); Chanaguano Caiza v. Scott, 25-cv-00500, 2025 WL 2806416, at *3 (D. Me. Oct. 2, 2025); D.S. v. Bondi, 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025); Rodriguez Vazquez v. Bostock, No. 25-cv-05240, 2025 WL 2782499, at *27 (W.D. Wash. Sept. 30, 2025); J.U. v. Maldonado, 25-CV-04836, 2025 WL 2772765, at *5 (E.D.N.Y. Sept. 29, 2025); Rivera Zumba v. Bondi, No. 25-cv-14626, 2025 WL

13

2753496, at *7 (D.N.J. Sept. 26, 2025); <u>Lopez v. Hardin</u>, No. 25-cv-830, 2025 WL 2732717, at *2 (M.D. Fla. Sept. 25, 2025); <u>Lepe v. Andrews</u>, No. 25-cv-01163, 2025 WL 2716910, at *9 (E.D. Cal. Sept. 23, 2025); <u>Giron Reyes v. Lyons</u>, No. C25-4048, 2025 WL 2712427, at *5 (N.D. Iowa Sept. 23, 2025); <u>Singh v. Lewis</u>, No. 25-cv-96, 2025 WL 2699219, at *3 (W.D. Ky. Sept. 22, 2025); <u>Pablo Sequen v. Kaiser</u>, No. 25-cv-06487, 2025 WL 2650637, at *7-8 (N.D. Cal. Sept. 16, 2025); <u>Jimenez v. FCI Berlin, Warden</u>, No. 25-cv-326, 2025 WL 2639390, at *10 (D.N.H. Sept. 8, 2025); <u>Lopez-Campos v. Raycraft</u>, No. 25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); <u>Arrazola-Gonzalez v. Noem</u>, No. 25-cv-01789, 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); <u>Anicasio v. Kramer</u>, 25CV3158, 2025 WL 2374224, at *2 (D. Neb. Aug. 14, 2025); <u>Lopez Benitez v. Francis</u>, No. Civ. 5937, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025); <u>Rosado v. Figueroa</u>, No. CV 25-02157, 2025 WL 2337099, at *10 (D. Ariz. Aug. 11, 2025). <u>But see</u> <u>Vargas Lopez v. Trump</u>, 25CV526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025); <u>Chavez v. Noem</u>, 25-cv-02325, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025).

While the court is not bound by decisions of the BIA, at this early stage it cannot be said that the government's current novel interpretation of the statutory scheme, which is admittedly "a complex set of legal provisions created at different times and modified over a series of years," <u>Yajure Hurtado</u>, 29 I&N Dec. at 227, is wholly lacking in merit. But even <u>Jennings</u>, upon which

14

Respondents rely heavily, supports Petitioner's position, as the Court noted that § 1226 generally governs the process of arresting and detaining aliens inadmissible at the time of entry who are "already in the country pending the outcome of removal proceedings." Jennings, 583 U.S. at 289.

Here, Petitioner has been present in the United States since 2021, was released on his own recognizance following an initial detention by CBP, and possesses a current government-issued EAD. (See Doc. 1 ¶¶ 3, 6; Doc. 1-5 at 1.) Moreover, Respondents do not allege that CBP released Petitioner on temporary humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which would designate him an "arriving alien" and subject him to § 1225's mandatory detention provisions. Cf. Rodriguez v. Bondi, No. 25-cv-00791, 2025 WL 2490670, at *2-3 (E.D. Va. June 24, 2025) (applying § 1225 to a petitioner who had been released on temporary humanitarian parole rather than on his own recognizance). Thus, Petitioner's detention is likely governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures.

### 3. Whether Petitioner's Detention Under § 1226 Is Unlawful

Petitioner raises multiple arguments in asserting that his detention under § 1226 is unlawful. He argues his detention contravened the governing statutory and regulatory framework and violates the Constitution's guarantee of due process. More

15

specifically, he asserts Respondents' failure to comply with several required procedural protections – including "issuance of a notice to appear, a warrant of arrest, a bond hearing, individualized assessment of flight risk and danger, and consular notification." (Doc. 9 at 14.) He also argues that the official who ordered the revocation of his release on recognizance, SDDO Sanchez, lacked the authority to do so; that revocation was not appropriate because there was not a prior finding that he is a flight risk or danger to the community; and that even if revocation of his release were otherwise appropriate, his detention remains unlawful because revocation occurred approximately a week after his detention. (See Doc. 1 at 18-27; Doc. 12 at 3.)

To be sure, Respondents do not purport to have complied with § 1226 in initially detaining Petitioner, as they have consistently maintained that they were instead legally permitted to detain him under § 1225. (See, e.g., Doc. 11 at 4 (noting that "ICE/ERO detained the Petitioner pursuant to INA § 235(b)(2)(A)"); id. at 6 (referencing Respondents' "reliance on § 1225's mandatory-detention provision").) Indeed, Respondents admit, when Petitioner was detained, they were unaware that he had previously been released on an order of release on recognizance. (Id. at 4 ("At that time, it was not readily apparent that [CBP] previously released the Petitioner on the OREC."); Doc. 11-1 at 2 (same).) Consequently, when detaining Petitioner, Respondents did not

16

comply with the regulatory requirements governing revocation of release under 8 C.F.R. § 236.1, which entitle a detainee to an opportunity to seek release on bond and notice of his right to contact consular services.

Revocation itself occurred on October 2, 2025, approximately a week into Petitioner's detention. To date, there is no record that Petitioner has been given any notice as to why he was detained or a bond hearing. Because Petitioner is an alien subject to § 1226, Respondents' failure to comply with agency regulations, including arrest by an authorized immigration official, deprived him of the procedural process due him, rendering his initial arrest and detention unlawful. See Accardi, 347 U.S. 260.[4]

But this court must evaluate Petitioner's request for relief against the changed factual landscape – namely, that since his detention, Respondents have revoked his release on recognizance and moved up his removal hearing to October 9, 2025. Respondents have submitted evidence that Petitioner has failed to appear for scheduled hearings, as discussed further below. In considering Petitioner's request for release, the court "recognizes the need to carefully distinguish between 'the substantive power of the

---

[4] To the extent Respondents eschew "prior administrative policy that resulted in [Petitioner's] release on a recognizance bond after unlawfully crossing the border," which they construe as a "long-standing practice," and rely instead on a new interpretation of § 1225 and new policy emphases (Doc. 11 at 14), Accardi prohibits them from dispensing with the current regulatory requirements.

Executive branch over immigration issues, an area in which it indeed has plenary power, and the <u>means</u> the government has chosen to exercise that plenary power to which no executive deference is necessary.'" <u>Hasan</u>, 2025 WL 2682255, at *10 (quoting <u>Ashley v. Ridge</u>, 288 F. Supp. 2d 662, 667 (D.N.J. 2003)).

### a. Petitioner's Detention and the Statutory and Regulatory Framework

Petitioner has not pointed to any authority that § 1226 requires (1) certain notice prior to the detention of an alien or (2) an alien previously released on recognizance to be deemed a flight risk or danger to the community prior to detention. <u>See generally</u> 8 U.S.C. § 1226; <u>see Jennings</u>, 583 U.S. at 307 (rejecting claim that § 1226(c) required release where not a flight risk or danger to the community). Section 1226 does, however, contemplate that the Attorney General may release the alien on bond. 8 U.S.C. § 1226(a)(2). Although the statutory language itself suggests that the decision to grant or withhold bond is a discretionary act by the Attorney General, courts have generally found that alien detainees under § 1226 are entitled to a bond hearing. <u>See, e.g.,</u> <u>Hasan</u>, 2025 WL 2682255, at *5 (noting that "those detained under Section 1226(a) are entitled to a bond hearing before an [immigration judge] at any time before entry of a final removal order" (quoting <u>Rodriguez Vazquez v. Bostock</u>, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025))). The governing regulations contemplate

18

a detainee's ability to make his case for release on bond, including before an immigration judge: "the immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 236.1(d)(1). Indeed, the Fourth Circuit has noted that an alien detainee under § 1226 has the right to seek release on bond. See Miranda, 34 F.4th at 346-47, 363-64 (discussing an alien's ability to seek release before an immigration officer, an immigration judge, and the Board of Immigration Appeals).

Here, the Petition alleges that Respondents "ignore[d] instructions in their own regulations regarding . . . [an] opportunity to apply for a bond." (Doc. 1 ¶ 109.) Respondents do not contend that Petitioner has in fact been provided that opportunity. (See generally Docs. 11, 13.) Consequently, Respondents have violated Petitioner's right to seek release on bond as contemplated by 8 C.F.R. § 236.1(d)(1).[5]

Petitioner's argument that SDDO Sanchez lacked authority to revoke his release on recognizance, by contrast, is unpersuasive. The Petition alleges that the ICE Executive Associate Director had neither revoked release nor delegated his authority to revoke.

---

[5] In his supplemental briefing, Petitioner also notes that he has not been advised of his right to consular communication under 8 C.F.R. § 236.1(e). (Doc. 9 at 7, 14.) Respondents have not responded to this assertion. (See generally Doc. 11.)

(Doc. 1 ¶ 85.)  Subsequently, in briefing, Petitioner argued that only those listed in 8 C.F.R. § 236.1(c)(9) were authorized to revoke release and that SDDO Sanchez lacked the proper delegation. (Doc. 16 at 5.)  But Respondents have submitted an exhibit indicating that the Executive Associate Director had in fact delegated this authority to SDDOs in July 2019.  (See Doc. 14-1 at 1.)  Petitioner is thus not likely to demonstrate success on the merits of this contention.

Similarly unpersuasive is Petitioner's argument that his detention is unlawful because of insufficient notice.  (See generally Docs. 1, 4-1, 9.)  Petitioner has been unable to identify any requirement in the governing statutes or regulations indicating advance notice was required prior to his detention under § 1226.  Given Respondents' evidence that Petitioner was provided notice of his obligation to report in November 2021 and failed to comply, see Doc. 11-1 at 1-2, this court is disinclined to grant relief on the grounds that Respondents have not provided sufficient notice.

The court turns next to Petitioner's argument that his detention is necessarily unlawful without a prior finding that he is a danger to the community or a flight risk.

As with § 1226, nothing under the governing regulations suggests that an alien previously released on recognizance must be deemed a flight risk or danger to the community prior to detention.

20

See 8 C.F.R. § 236.1.  Section 236.1(c)(8) provides in part that release may be appropriate "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  It does not necessarily follow, however, that re-apprehension after release is only permitted under these regulations where a change in circumstances has occurred such that the alien is now considered a danger to the community or flight risk.  Indeed, § 236.1(c)(9) suggests that detention after release is a highly discretionary act:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained.

8 C.F.R. § 236.1(c)(9).  Having found no statutory or regulatory basis for Petitioner's change of circumstances requirement, the court turns to Petitioner's argument that his detention violates the Constitution's guarantee of due process.  (See Doc. 4-1 at 11-13; Doc. 9 at 10-14.)

### b.  Petitioner's Detention and Constitutional Due Process

As both Petitioner and Respondents note, the court evaluates

21

this constitutional claim through the test set out in <u>Mathews v.</u> <u>Eldridge</u>, 424 U.S. 319, (1976). (Doc. 4-1 at 11, Doc. 11 at 16.) That requires a court to consider "three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Id.</u> at 335. District courts, as well as the First and Ninth Circuits, and a panel of the Fourth Circuit, have used the <u>Mathews</u> factors to consider constitutional due process claims for detention based on § 1226. See <u>Miranda</u>, 34 F.4th at 358-59 (discussing other courts' use of the <u>Mathews</u> factors in this context). The parties' briefing on this issue is, at best, sparse. Petitioner's argument under <u>Mathews</u>, as the court understands it, is that constitutional due process only permits detention under § 1226 where there has been a prior finding that the alien is a flight risk or danger to the community. (<u>See</u> Doc. 4-1 at 12.)

The first <u>Mathews</u> factor requires the court to weigh the private interests at stake; in this case, Petitioner's freedom from detention. A person's interest in freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001). Petitioner's interest here is nevertheless reduced for two

22

reasons: his status as a noncitizen, and because his detention is not of an indefinite duration is but much more limited – until his removal hearings, which have now been moved up from March 2027 to October 9, 2025. (<u>See</u> Doc. 12 at 4.) "Supreme Court precedent establish[es] that aliens are due less process when facing removal hearings than an ordinary citizen would have." <u>Miranda</u>, 34 F.4th at 361; <u>see</u> <u>id.</u> at 360-61 (distinguishing instances where a prisoner is detained for an impending removal hearing from instances where a prisoner is detained indefinitely and possibly permanently). However, Petitioner's OREC was the product of CBP's conclusion that he demonstrated that he was not a flight risk or a danger to the community. 8. C.F.R. § 236.1(c)(8). This factor therefore weighs in Petitioner's favor, though weakly.

The second factor requires the court to analyze the risk of erroneous deprivation of private interests through Respondents' process and the probable value of additional or substitute safeguards. To be sure, "aliens already receive the fundamental features of due process – notice and an opportunity to be heard. . . . The current procedures provide aliens detained by the government three separate opportunities to make their case concerning bond." <u>Miranda</u>, 34 F.4th at 362 (referring to opportunities before an immigration officer, immigration judge, and the Board of Immigration Appeals) (quoting <u>Mathews</u>, 424 U.S. at 333 for the proposition that "[t]he fundamental requirement of

due process is the opportunity to be heard at a meaningful time and in a meaningful manner" (quotation marks omitted)). Relevant here, contrary to the law of the First and Ninth Circuits, the Fourth Circuit has approved placing the burden on a petitioner to show at a bond hearing that he is not a danger to the community or flight risk. See id. at 366. Petitioner overlooks this standard in this circuit in asserting that constitutional due process requires the agency to affirmatively find the alien to be a flight risk or danger to the community prior to detention. (See Doc. 9 at 8-9.) The court finds that the current statutory and regulatory process under § 1226 and § 236.1 sufficiently protects his asserted interests such that the value of his proposed requirements would be minimal.

As to the third factor, the court considers Respondents' interests in using the current process, including the burdens they would incur using additional or substitute process. Respondents' interest in exercising its authority under the Nation's immigration laws to protect the Nation's borders and ensure that those subject to removal are not a danger to the community is indeed high. First, as a general matter, control over immigration is "a sovereign prerogative, largely within the control of the executive and the legislature." Landon v. Plasencia, 459 U.S. 21, 34 (1982). Second, the government has a legitimate interest in detention during the deportation process. Miranda, 34 F.4th at

24

364 (citing <u>Wong Wing v. United States</u>, 163 U.S. 228, 235, (1896)). "[P]reventing detained aliens from absconding and ensuring that they appear for removal proceedings is a legitimate governmental objective." <u>Dawson v. Asher</u>, 447 F. Supp. 3d 1047, 1050 (W.D. Wash. 2020) (citing <u>Jennings</u>, 583 U.S. at 286).[6]

Here, § 1226(a) permits Respondents to detain Petitioner in preparation for a removal proceeding. While such detention cannot be for an indefinite period of time, <u>see Zadvydas</u>, 533 U.S. at 689-90, here Petitioner's removal hearing is set for October 9, 2025. Under current law, the government must provide Petitioner the procedural protections of § 1226(a) and § 236.1, which include the individualized determination of an immigration judge as to whether Petitioner should be released on bond under § 1226(a) as well as his right to consular communication. These protections constitute a meaningful burden on Respondents. Petitioner's additional requirements would constitute an impingement on the government's sovereign prerogative to control immigration. This

---

[6] This is especially true where, as here, the Government proffers evidence that Petitioner has failed to comply with his conditions of release on recognizance by failing to appear. (<u>See</u> Doc. 11-1 at 1-2 (Declaration of SDDO Michael Sanchez).) <u>Cf. Espinoza v. Kaiser</u>, No. 25-CV-01101, 2025 WL 2675785, at *13 (E.D. Cal. Sept. 18, 2025) (noting that "release from ICE custody constituted an implied promise that [his] liberty would not be revoked unless [he] failed to live up to the conditions of [his] release." (quotation marks and citation omitted)); (Doc. 11-1 at 10 (OREC advising Petitioner that failure to comply with his release order may result in revocation of release and arrest and detention by ICE).) Although Petitioner's brief asserts that Petitioner has complied with his reporting obligations, <u>see</u> Doc. 12 at 3, there is no <u>evidence</u> to support that claim.

factor thus weighs in favor of Respondents.

Accordingly, the court finds that the Mathews factors favor Respondents on Petitioner's claim that he is entitled to a pre-detention determination of changed circumstances. This does not vitiate Respondents' requirement, however, to provide Petitioner the protections of § 1226(a) and § 236.1.

### 4. Remaining Winter Factors

The remaining Winter factors also weigh in favor of Petitioner's entitlement to a bond hearing and consular notification. He contends that he will suffer irreparable harm in the absence of preliminary relief based on his ongoing detention. (Doc. 4 at 2.) He faces a period of mandatory detention without a bond hearing, likely in violation of the statutory scheme. During his time detained, Petitioner is separated from his wife and family, whom he supports financially, and he confronts ongoing risks to his safety and health. (Id.) This loss of liberty in the absence of a TRO would constitute irreparable harm. See Miranda, 34 F.4th at 365 (noting that the erroneous deprivation of an alien's liberty, "for even minimal periods of time, unquestionably constitutes irreparable injury" (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976))).

Finally, the third and fourth preliminary injunction factors – the balance of the equities and the public interest – "merge when the Government is the opposing party." Nken v. Holder, 556

26

U.S. 418, 435 (2009).  As to the balance of the equities, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"  Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987)).  When considering the public interest, the court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Id. (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).  But "the public 'undoubtedly has an interest in seeing its governmental institutions follow the law.'"  Roe v. Dep't of Def., 947 F.3d 207, 230-31 (4th Cir. 2020) (quoting Roe v. Shanahan, 359 F. Supp. 3d 382, 421 (E.D. Va. 2019)).

Here, Respondents initially revoked Petitioner's release on recognizance without lawful authority; transferred him between two separate domestic detention centers before revoking his release; and failed to present him to any immigration judge or officer. Given these clear deprivations, the balance of equities and the public interest favor the requested injunctive relief.

### 5.  Petitioner's Upcoming Hearing

In Petitioner's second supplemental memorandum, he requests that the court order Respondents to cancel the recently scheduled removal hearing for October 9, 2025, in Lumpkin, Georgia.  (Doc. 12 at 4.)  Petitioner contends that only the cancellation of this hearing, along with the transfer of his removal proceedings back

27

to Charlotte, North Carolina, on the non-detained docket, will restore him to his position prior to the current detention. (Id.) But Petitioner does not cite to any authority that would provide the court with jurisdiction over the scheduling of a removal proceeding. In fact, Petitioner's request runs squarely into § 1252(g)'s jurisdictional bar regarding the adjudication of removal proceedings. Cf. Mohammed H. v. Trump, 786 F. Supp. 3d 1149, 1155 (D. Minn. 2025) (finding no § 1252(g) jurisdictional bar in part because the petitioner did not seek "to pause or end his removal proceedings" (emphases added)). The court therefore declines to grant Petitioner this requested relief.

\* \* \*

In sum, Petitioner has shown a likelihood of success on his claim that his continued detention is unlawful, because he is not being provided the protections afforded under § 1226(a). For over thirteen days, he has been denied rights under 8 C.F.R. § 236.1 – including a bond hearing and right to consular communication.[7] However, because Respondents have demonstrated that SDDO Sanchez possessed delegated authority to revoke Petitioner's release on

---

[7] The court need not determine the proper time a bond determination must be made. Because Respondents have held Petitioner for thirteen days without such a determination and have advanced Petitioner's hearing to October 9, 2025, Respondents left themselves with little time to offer a meaningful hearing and consular communication. Thus, on the facts of this case the court will order that Respondents act within twenty-four hours.

28

October 2, 2025, Petitioner's argument that his present detention remains unlawful is unlikely to succeed as long as Petitioner is provided the rights noted above.[8]  Finally, as long as Respondents provide Petitioner his rights under § 236.1, Petitioner has not demonstrated that the text of the governing statute and regulations or the Mathews test likely compels a different outcome.

**III. CONCLUSION**

For the reasons stated,

IT IS HEREBY ORDERED that Petitioner's motion for a TRO is GRANTED IN PART and DENIED IN PART, in that Respondents, including all those acting for them or on their behalf, SHALL release Petitioner within twenty-four hours unless he is provided the procedural protections of 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1, including a bond hearing and right to consular communication, and the motion is otherwise DENIED.

Given the nature of the relief ordered, namely the granting

---

[8] At the hearing, counsel for Petitioner asked the court to order a bond hearing if it would not order full release of Petitioner. (See Doc. 10 at 43:22-25.)  In his subsequently filed supplemental briefing, "Petitioner respectfully request[ed] relief in the form of release, as ordering a bond hearing before an Immigration Judge would likely be futile under the current circumstances."  (Doc. 9 at 26.)  The court does not construe this as a waiver of his request for a bond hearing. The court cannot conclude that such a hearing would be futile; moreover, release would be inappropriate if Petitioner is provided the procedural rights to which he is entitled.  See Romero-Nolasco v. McDonald, No. 25-cv-12492, 2025 WL 2778036, at *3 (D. Mass. Sept. 29, 2025) (finding that petitioner "has provided no support to show that he would not receive a fair bond hearing upon the Court's order to do so under 8 U.S.C. § 1226(a)").

29

of a bond hearing as required by the regulations, and because the government cannot reasonably assert that it is harmed in any legally-cognizable sense, the court DECLINES to require the posting of any bond.


                                        /s/   Thomas D. Schroeder
                                        United States District Judge

October 7, 2025
7:28 p.m.