IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| S.D.B.B., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:25-cv-882 |
| | ) | |
| TERRY S. JOHNSON, in his official | ) | |
| capacity as Sheriff, Alamance County; | ) | |
| MAJOR STEVEN YOUNG, WARDEN, Alamance | ) | |
| County Detention Facility; TODD LYONS, | ) | |
| in his official capacity as Acting | ) | |
| Director of Immigration and Customs | ) | |
| Enforcement; KRISTI NOEM, Secretary of | ) | |
| Homeland Security; and PAMELA BONDI, | ) | |
| United States Attorney General, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Petitioner S.D.B.B.'s seven-count petition for a writ of habeas corpus asserts that he has been illegally detained by the United States Department of Homeland Security's Immigration and Customs Enforcement ("ICE") since September 24, 2025. (Doc. 1.) Petitioner subsequently filed an emergency motion for temporary restraining order ("TRO") (Doc. 4), which the court granted in part and denied in part (Doc. 19). Petitioner filed a second motion for TRO (Doc. 21), along with a motion to show cause why Respondents should not be held in civil contempt (Doc. 22). The court held a hearing on the latest motions on October 9, 2025, and

the parties thereafter filed multiple briefs and supplements. (Docs. 24, 25, 26, 27, 29, 31, 32.)  For the reasons that follow, Petitioner's motion for TRO and motion to show cause will be denied.

I.  BACKGROUND

The court previously outlined this action's factual and procedural background in its October 7, 2025 memorandum opinion and order.  (Doc. 19.)  Thus, the court here only describes the relevant updates since then.

In granting in part Petitioner's previous emergency motion for TRO, and in light of the then-scheduled removal hearing set in less than 48 hours, the court required Respondents to afford Petitioner within twenty-four hours the procedural protections of 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1, including the right to a bond hearing and consular communication.  (Id. at 29.)  At 6:30 p.m. the next evening, Respondents filed a notice of compliance, demonstrating that Petitioner received a custody redetermination hearing pursuant to 8 C.F.R. § 1236.  (Doc. 20 at 1; Doc. 20-1 at 1.)  Respondents reported that at the hearing, the immigration judge ("IJ") denied bond because Petitioner failed to meet his burden to show that he was not a flight risk.  (Doc. 20-1 at 1.)  Moreover, Respondents asserted that Petitioner had received notice of his right to consular notification on September 26, 2025, which he declined.  (Doc. 20 at 2.)

2

Thereafter, on October 9, 2025, Petitioner filed a second motion for TRO, seeking immediate release from custody or, in the alternative, an injunction against Respondents deporting him from the United States and an order returning him to North Carolina for the duration of his habeas proceedings. (Doc. 21 at 2.) Petitioner asserts that Respondents failed to comply with the court's TRO because they conducted the hearing pursuant to § 1236 rather than § 236.1. (Id. at 6.) Moreover, Petitioner asserts that he remains entitled to emergency relief because Respondents denied him the right to counsel at his bond hearing, despite his request, and failed to adequately notify him of his right to consular communication after the court entered the TRO. (Id. at 4; Doc. 24 at 2.) Consequently, Petitioner argues, his ongoing detention constitutes irreparable harm (Doc. 24 at 6), and Respondents should be held in civil contempt (Doc. 22).

That same day, October 9, 2025, the court held a hearing on Petitioner's second TRO motion. (See Doc. 26.) At the hearing, neither party identified a material difference in the procedural protections afforded by either § 236.1 or § 1236.1. (Id. at 50:23-51:9.)[1]  Moreover, regarding Petitioner's lack of counsel at the bond hearing, Petitioner's counsel conceded that – at the time of the bond hearing – no attorney had yet made an appearance as an

---

[1] Citations are to the page and line of the transcript.

3

attorney of record for Petitioner in his immigration court proceedings. (Id. at 16:5-9.) Finally, Petitioner's counsel returned to their claim that Petitioner's continued detention was unlawful because it occurred without a pre-detention bond hearing; but, when asked by the court to point to a specific statutory or regulatory provision affording such right, counsel failed to identify one. (Id. at 45:3-47:11.)

Shortly after the hearing, the court extended its order enjoining Petitioner's removal from the continental United States until 12:01 a.m. on October 11, 2025. (Doc. 23.) Petitioner filed a supplemental brief in support of his second TRO motion. (Doc. 25.) Respondents filed a response, in which they requested that the court delay ruling on Petitioner's second TRO motion until Respondents could provide the court with a copy of the digital audio recording of Petitioner's bond hearing. (Doc. 27 at 7.) Accordingly, the court again extended its order enjoining Petitioner's removal from the continental United States until twenty-four hours after Respondents provided the court with the recording. (Doc. 28.) Petitioner later filed a memorandum in support of his motion to show cause. (Doc. 29.) Respondents filed a copy of the digital audio recording of the bond hearing with the Clerk's Office at 2:02 p.m. on October 15, 2025. Petitioner filed a response to the recording (Doc. 31), and Respondents replied (Doc. 32). Petitioner's motions are now ready for decision.

4

## II. ANALYSIS

### A. Petitioner's TRO Motion

#### 1. Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). Accordingly,

> [a] plaintiff seeking a preliminary injunction must establish that [(1)] he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of the equities tips in his favor, and [(4)] that an injunction is in the public interest.

Id. at 20. These factors also apply to the issuance of a temporary restraining order. Green v. ABC Cos., 702 F. Supp. 3d 418, 423 & n.1 (W.D.N.C. 2023). Moreover, courts routinely apply this standard in the immigration context. See, e.g., Vitkus v. Blinken, 79 F.4th 352, 361 (4th Cir. 2023) (applying the factors to determine whether the plaintiff had demonstrated a likelihood of success on the merits in opposing his extradition to Lithuania); Miranda v. Garland, 34 F.4th 338, 366 (4th Cir. 2022) (applying the factors to determine whether the plaintiff had demonstrated a likelihood of success that the placement of the burden on aliens to prove a lack of flight risk or danger to the community in § 1226(a) bond hearings violated constitutional due process guarantees). Because preliminary relief is extraordinary and not to be granted as a matter of course, it may "only be awarded upon

5

a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

### 2. Whether Petitioner Has Demonstrated That His Continued Detention Is Likely Unlawful

#### a. Procedural Protections Under the Regulations

Petitioner contends that, because the IJ conducted the bond hearing pursuant to § 1236.1 rather than § 236.1, Petitioner was not afforded the appropriate procedural protections. (Doc. 21 at 4-5.) Respondent counters that the procedural protections provided under § 1236.1 essentially duplicate the protections mandated by § 236.1. (Doc. 27 at 7.) Indeed, neither party contended otherwise at the hearing on October 9, 2025. (Doc. 26 at 50:23-51:9.)

The court's TRO ordered that Petitioner's bond hearing comply with § 236.1, which falls within Title 8, Chapter I of the Code of Federal Regulations. (Doc. 19 at 29.) An alien's right to legal representation under Chapter I can be found in 8 C.F.R. § 292.5(b), which provides that "[w]henever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney." However, § 1236.1 falls within Title 8, Chapter V of the Code of Federal Regulations. In Chapter V, an alien's right to legal representation is located within 8 C.F.R. § 1292.5(b). Yet § 1292.5(b) similarly provides that "[w]henever an examination is provided for in this chapter, the person involved

6

shall have the right to be represented by an attorney."[2]

As Respondents correctly assert, the regulatory history confirms that Chapter V simply duplicated the relevant parts of Chapter I when the functions of the Immigration and Naturalization Service were transferred to the Department of Homeland Security. See Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9824 (Feb. 28, 2003). This duplication made no substantive change in the regulations. Id. at 9825. In fact, in the supplemental memorandum filed with his first TRO motion, Petitioner also described § 1236.1 as a "duplicate provision" of § 236.1. (Doc. 9 at 3.) Thus, because of the identical regulatory language and accompanying procedural protections, the IJ's decision to hold Petitioner's bond hearing pursuant to § 1236.1 rather than § 236.1 had no material impact on the protections afforded Petitioner.

### b. Right to Counsel at the Bond Hearing

Petitioner contends that he was denied counsel at his bond hearing, despite his explicit request. (Doc. 24 at 2.) According to the declaration of Ms. Karen Weinstock, Petitioner's counsel, Petitioner's employer informed Ms. Weinstock that Petitioner "requested an attorney" at the bond hearing. (Doc. 21-2 ¶ 9.)

---

[2] As noted below, both § 1292.5(b) and § 292.5(b) provide that no applicant for admission shall have the right to appointed counsel at government expense unless he or she is "the focus of a criminal investigation and has been taken into custody."

7

However, the digital audio recording of the bond hearing reveals that Petitioner never requested an attorney, nor did he claim that he had retained an attorney to represent him before the IJ. Rather, when asked by the IJ, "What did you do for a living?" Petitioner stated, "I drove trucks for McLean. Actually, I'm still employed with McLean. They actually are paying for the attorney, and they are doing everything for me." Further, Petitioner's counsel acknowledged at the October 9, 2025 hearing before this court that no attorney had registered an appearance for the purpose of Petitioner's immigration proceedings at the time of the bond hearing. (Doc. 26 at 16:5-9.) Respondents therefore contend that, while Petitioner certainly knew of his right to counsel, he simply had no attorney of record at the time of the bond hearing. (Doc. 27 at 3-4.)

As the parties agree, an alien does not have a right to appointed counsel in deportation proceedings. See Gandarillas-Zambrana v. Bd. of Immigr. Appeals, 44 F.3d 1251, 1256 (4th Cir. 1995); see also Romero v. Bondi, 150 F.4th 332, 349 (4th Cir. 2025) (Diaz, C.J., concurring in the judgment) ("And as the majority seems to accept, immigrants in removal proceedings have no right to counsel."). But as already noted, the Code of Federal Regulations does provide that, "[w]henever an examination is provided for," an alien "shall have the right to be represented by an attorney." 8 C.F.R. §§ 292.5(b), 1292.5(b); see Romero, 150

8

F.4th at 340 ("And although noncitizens are not guaranteed an appointed attorney, they do have the right to retain an attorney."). The Department of Justice outlines the process by which attorneys make an appearance before the immigration court in its Immigration Court Practice Manual, which Petitioner has cited to the court. (Doc. 24 at 9 (citing U.S. Dep't of Just., Immigration Court Practice Manual § 2.3, https://www.justice.gov/eoir/reference-materials/ic/chapter- 2/3).) If an attorney does not properly complete the relevant forms, "the attorney's appearance may not be recognized." U.S. Dep't of Just., supra, § 2.3(b)(1).

In response to the digital audio recording of his bond hearing, Petitioner asserts that the IJ possessed an affirmative duty to advise him of his right to representation pursuant to 8 C.F.R. § 1240.10(a)(1). (Doc. 31 at 4.) But this regulation expressly applies to removal proceedings, which are "distinctly separate" from bond hearings. Matter of R-S-H-, 23 I. & N. Dec. 629, 630 n.7 (B.I.A. 2003); see 8 C.F.R. § 1240.10(a) ("In a removal proceeding, the immigration judge shall (1) Advise the respondent at his or her right to representation, at no expense to the government . . . ."). And in contrast to § 1240.10(a)(1), none of the regulations that address bond hearings indicates a duty to inform an alien of his right to counsel. See 8 C.F.R. §§ 292.5(b), 1003.16, 1292.5(b). Thus, as Respondents correctly

9

argue, § 1240.10 outlines procedural protections distinctly separate from the § 1226(a) and § 236.1 protections ordered by this court. (See Doc. 19 at 29; Doc. 32 at 2.)

Petitioner also cites several cases that he argues demonstrate either an affirmative duty on the part of the IJ to advise aliens of their right to counsel at bond hearings or that denial of right to counsel constitutes a structural error requiring relief. (Doc. 31 at 5.) But as Respondents rightly assert, Petitioner overstates the applicability of those cases.

For example, Petitioner cites Quintero v. Garland, 998 F.3d 612, 627 (4th Cir. 2021), to argue that the Fourth Circuit has held that IJs have an affirmative duty to advise aliens of their right to counsel at each stage of the removal process, including at bond hearings. (Doc. 31 at 5.) But as Respondents point out, the court in Quintero instead held that IJs have a particular duty to develop the record when an alien appears pro se at a removal proceeding. Quintero, 998 F.3d at 647. Nowhere did the court address, much less find, a duty on the part of IJs to advise aliens of their right to retain counsel at bond hearings.

Further, Petitioner cites Matter of C-B-, 25 I. & N. Dec. 888, 890 (B.I.A. 2012), where the court held that the IJ violated the alien's procedural rights by not expressly ruling on his request for a continuance to seek legal counsel during a removal proceeding. Even if the court's holding in Matter of C-B- extended

10

to bond hearings, the digital audio recording in this case reveals that Petitioner never requested a continuance to seek legal counsel. Finally, Petitioner's other cited cases from the First and Ninth Circuits also address an alien's right to counsel specifically in removal proceedings. See Hernandez Lara v. Barr, 962 F.3d 45, 53 (1st Cir. 2020); Arrey v. Barr, 916 F.3d 1149, 1157-58 (9th Cir. 2019); Tawadrus v. Ashcroft, 364 F.3d 1099, 1101, 1103 (9th Cir. 2004). Therefore, none of the cited cases provides support for Petitioner's contention that the IJ had an affirmative obligation to inform him of his right to counsel at a bond hearing.

Moreover, as Respondents correctly assert, there is no dispute here that Petitioner knew of his right to counsel. First, Respondents' evidence indicates that in 2021, Petitioner's Notice to Appear informed him that he may be represented by an attorney while in removal proceedings "at no expense to the Government." (Doc. 11-1 at 8.) At that time, Petitioner also initialed a list provided by the government of pro bono services available to him. (Doc. 27-1 at 1.) Second, Respondents have shown that upon arrival at an ICE detention center, all alien detainees are provided a copy of the National Detainee Handbook in their language of choice. (Doc. 27 at 4-5 (citing U.S. Immigr. & Customs Enf't, National Detainee Handbook (2024), https://www.ice.gov/doclib/detention/ndHandbook/ndhEnglish.pdf).) This handbook advises aliens of their right to counsel. See U.S. Immigr. & Customs Enf't, supra,

11

at 9. Third, Petitioner's counsel related that on the evening before Petitioner's bond hearing, in a three-way call with Petitioner's employer, counsel instructed Petitioner to request that an attorney be present with him at the bond hearing. (Doc. 21-2 ¶ 6.)

The issue, then, is not whether Petitioner knew of his right to self-retained counsel at the bond hearing. Rather, it is whether Petitioner was denied the opportunity to have retained counsel present at the bond hearing, in contravention of the governing regulations. But for whatever reason, despite the ongoing habeas petition before this court, no attorney filed a notice of appearance on Petitioner's behalf in immigration court before his bond hearing.³ (Doc. 26 at 16:5-9; Doc. 27 at 3.) Therefore, at the time of Petitioner's bond hearing, there simply was no counsel of record to represent him before the IJ.⁴ And as a result, at the outset of the approximately thirteen-minute bond hearing, the immigration court stated that Petitioner appeared pro

---

³ Respondents state that "[i]t is undisputed that separate counsel ultimately entered a notice of appearance in the removal proceedings at 7:12 PM on October 8 – hours after both the Court's close for hearings for the day and the actual completion of the bond hearing in this case – and minutes from the Court's imposed 24-hour deadline." (Doc. 32 at 5 n.4.)

⁴ Respondents related that after the bond hearing, an immigration lawyer in Lumpkin, Georgia, made an appearance in Petitioner's proceedings and in fact appeared telephonically on October 9 to secure a continuance of Petitioner's removal proceeding to October 29, 2025. (See Doc. 27 at 7.)

12

se.  Petitioner also did not request legal representation during the bond hearing, nor did he otherwise indicate that he needed additional time to obtain such representation.  Thus, because Respondents had no obligation to provide Petitioner with legal representation, they did not violate Petitioner's rights or the court's order when they conducted the bond hearing without any attorney for Petitioner.

### c. Right to Consular Communication

Petitioner argues that he did not validly waive his right to consular communication because any alleged notice of his right occurred outside the presence of legal counsel.  (Doc. 24 at 2.) According to Petitioner, his limited English proficiency thereby prevented any valid waiver of such a right.  (Id.)  Respondents have provided evidence that on September 26, 2025, two days after his detention, Petitioner received notice of his right to consular communication through a copy of the ICE Consular Notification Form, which is written in both Spanish and English.  (Doc. 27 at 10; Doc. 27-2 at 4.)  According to Respondents, Petitioner orally declined the option for consular notification, further stating, "We do not have a consulate."  (Doc. 27 at 10; Doc. 27-2 at 1.)

> Pursuant to both § 292.5(a) and § 1292.5(a),
>
> [w]henever a person is required by any of the provisions of this chapter to give or be given notice or to perform or waive the performance of any act, such notice or waiver shall be given by or to, made by, or requested of

13

> the attorney or representative of record, or the person himself if unrepresented.

8 C.F.R. §§ 292.5(a), 1292.5(a) (citation modified). Assuming without deciding that these provisions apply to Petitioner's notice of his right to consular communication, Petitioner was unrepresented at the time he received a copy of the relevant notification form and orally waived his rights. Thus, there would have been no requirement that Petitioner's notice of his right to consular communication occur through or in the presence of an attorney. Moreover, even if the IJ had re-advised Petitioner of a right to consular communication at his bond hearing, his argument would still fail because no counsel had yet entered an appearance.

Petitioner further points to his limited English language proficiency in highlighting the allegedly invalid waiver on September 26, 2025. (Doc. 24 at 2.) But Respondents have demonstrated that when Petitioner filled out his Form I-765 Application for Employment Authorization in both 2023 and 2025, he checked the box next to the statement "I can read and understand English, and I have read and understand every question and instruction on this application and my answer to every question" before signing the form under penalty of perjury. (Doc. 27 at 11-12; see Docs. 27-3, 27-4.) And regardless of Petitioner's English language proficiency, the notification form adequately informed Petitioner of his right in both English and Spanish. (See Doc.

14

27-2 at 3-4.) Accordingly, the court finds that Petitioner's previous waiver of the right to consular communication was valid. Respondents had no obligation to reinform Petitioner of this right after the court's TRO when they had already provided the requisite procedural protection.

### d. Right to a Pre-Detention Hearing

Petitioner contends that aliens who have been released on their own recognizance must receive advance notice and an opportunity to be heard by a neutral decisionmaker before their liberty is withdrawn. (Doc. 25 at 2.) According to Petitioner, Respondents' failure to hold such a pre-detention hearing incurably taints his continued detention, mandating Petitioner's immediate release. (Id. at 3.)

First, Petitioner revives his argument from the previous TRO motion that Supervisory Detention and Deportation Officer ("SDDO") Michael Sanchez could not properly revoke Petitioner's release on recognizance. (Id. at 6.) However, based on the evidence, the court already found that Petitioner was not likely to demonstrate that SDDO Sanchez lacked the proper delegation of authority. (Doc. 19 at 20.) Thus, with no new evidence, the court maintains its previous conclusion.

Second, Petitioner points to a handful of recent district court decisions that have found a right to a pre-detention hearing in 8 U.S.C. § 1226(a) proceedings pursuant to the Fifth Amendment's

15

Due Process Clause. (Doc. 25 at 9, 14.) But this court already considered and rejected the argument that constitutional due process requires Petitioner to receive a pre-detention hearing before ICE may revoke his release on recognizance. (Doc. 19 at 21-26.) Cf. Pham v. Becerra, 717 F. Supp. 3d 877, 888 (N.D. Cal. 2024) (requiring a bond hearing within five days if petitioner is re-detained).

Moreover, the courts that have expressly articulated a constitutional due process right to a pre-detention hearing all reside within the First and Ninth Circuits, which shift the burden onto the government in § 1226(a) proceedings to demonstrate that the alien is neither a flight risk nor a danger to the community. See Miranda, 34 F.4th at 366. But noting "more than a century of case law providing that aliens are not subject to the same due-process protections as ordinary citizens," the Fourth Circuit has held that the government may place the burden of proof on the alien. Id. Petitioners identify no district court within the Fourth Circuit that has found a constitutional due process right to a pre-deprivation hearing in the § 1226(a) context, and the court's own research has uncovered none.

Even assuming without deciding that Respondents owed Petitioner a pre-detention hearing, Petitioner can point to no continuing harm. Petitioner has now received the opportunity to contest the necessity of his continued detention at his bond

16

hearing before the IJ on October 8, 2025.  Petitioner even had the right to have a lawyer at that hearing, but none made an appearance for him nor did he invoke that right.  And at the hearing, the IJ determined that Petitioner posed a flight risk and denied bond accordingly.  (Doc. 20-1 at 1.)  Therefore, Petitioner remains unlikely to succeed on the merits of his due process claim.

Third, Petitioner contends that both the Administrative Procedure Act ("APA") and the Accardi doctrine mandate his release. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).  (Doc. 25 at 15-16.)  Petitioner reiterates the allegedly improper revocation of his release on recognizance.  (Doc. 25 at 15-16.)  But again, the court has concluded that SDDO Sanchez possessed the necessary authority to revoke Petitioner's release. Moreover, Petitioner has failed to point to any statute or regulation requiring Respondents to provide Petitioner with a pre-detention hearing before revoking his release on recognizance.[5] Thus, because any such right would arise only from the Fifth Amendment's Due Process Clause, there is simply no support for the

---

[5] Petitioner attempts to locate the right to pre-detention notice and an opportunity to be heard through a comparison of the revocation of a release on recognizance under § 236.1 with the revocation of an order of supervision under 8 C.F.R. § 241.4.  (Doc. 25 at 6-7.)  But this comparison merely highlights the critical difference between the two regulations, as § 241.4(d) expressly provides that "[a] copy of any decision . . . to detain an alien shall be provided to the detained alien" and a decision to retain custody must "briefly set forth the reasons" for the detention.  By comparison, § 236.1 contains no such provision.

17

contention that Respondents' failure to provide a pre-detention hearing violates either the APA or the Accardi doctrine.

In sum, Petitioner has failed to demonstrate that he is likely to succeed on the merits of his claim that his continued detention is unlawful.[6] Without finding that this first Winter factor weighs in Petitioner's favor, the court need not address the remaining factors. See Vitkus, 79 F.4th at 361 ("Notably, a district court is entitled to deny preliminary injunctive relief on the failure of any single Winter factor, without fully evaluating the remaining factors.").

### B. Petitioner's Motion to Show Cause

A party moving for civil contempt must establish four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

De Simone v. VSL Pharms., Inc., 36 F.4th 518, 529 (4th Cir. 2022) (quoting Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)). "Once the [movant] establishes that the [alleged

---

[6] In the alternative to his immediate release, Petitioner requests transfer from the detention center in Lumpkin, Georgia, back to North Carolina. (Doc. 21 at 2.) But given the likely lawfulness of Petitioner's current detention, the ongoing removal proceedings, and the presence of Petitioner's counsel for these proceedings in Lumpkin, Georgia, the court finds no equitable interest in Petitioner's transfer.

18

contemnor] violated the [decree], the burden shifts to the [alleged contemnor] . . . to demonstrate that she made in good faith all reasonable efforts to comply with the [decree]." Id. (alterations in original) (quoting United States v. Ali, 874 F.3d 825, 831 (4th Cir. 2017)).

Here, there is no dispute that the first two elements – a valid decree in Petitioner's favor – are present. But Petitioner has not put forward any evidence to indicate that Respondents violated the terms of the TRO. Rather, as already noted, the bond hearing conducted pursuant to § 1236.1 afforded Petitioner the same procedural protections required by the court's order, including Petitioner's right to retain his own counsel. Respondents cannot be blamed for the fact that Petitioner had no counsel of record at the time of the bond hearing. Moreover, Respondents have demonstrated that they provided Petitioner notice of his right to consular communication on September 26, 2025, in compliance with the applicable regulations. Thus, the court is not persuaded that Respondents violated the terms of the TRO, and an order to show cause is not warranted.

## III. CONCLUSION

For the reasons stated,

IT IS HEREBY ORDERED that Petitioner's second motion for TRO (Doc. 21) and Petitioner's motion to show cause (Doc. 22) are DENIED.

19

```
                                       /s/   Thomas D. Schroeder
                                      United States District Judge
October 17, 2025
```